Yeskoo Hogan & Tamlyn, LLP
535 Fifth Avenue
New York, NY 10017
212-983-0900
Attorneys for SSP Capital Partners, LLC
By: Richard C. Yeskoo

UNITED STATES DISTRICT COURT FOR THE
SOUTHERN DISTRICT OF NEW YORK
--------------------------------------------------------------X

SSP CAPITAL PARTNERS, LLC,                          1:07-cv-03878 (NRB)

                                    Plaintiff,

                                                     Affidavit of Michael
          – against –                                Gordon

MANDALA, LLC, HAROUST, LLC, HAMILTON
GRANGE, LLC, ARABARA, LLC and 316
SECOND AVENUE, LLC,

                                    Defendants.
--------------------------------------------------------------X

State of New York      )
                       ) ss:
County of New York     )

          MICHAEL GORDON, being duly sworn, deposes and says:

          1.      I am a member of SSP Capital Partners, LLC ("SSP"), a Maryland

limited liability company with its offices located at 11607 Springridge Road,

Potomac, Maryland.  I have personal knowledge of the matters set forth herein.

          2.      SSP engages in the business of real estate investment and lending.

It has two members – Richard Grodsky and me.  We are both residents of

Maryland.

          3.      The defendants are New York real estate holding companies

controlled by H. Derderian.

                                         1

4.      As of February 22, 2007 at least three of defendants' properties were in foreclosure and Mr. Derderian told me that he needed to raise money to save the properties.  He indicated he was under constant pressure from his lenders.  One property, 72-84 East 111th Street, was in the process of being sold, but the it was uncertain whether the sale would close and the closing date was uncertain.

5.      On the evening of February 22, 2007, (more precisely at 1:04am on February 23, 2007) I emailed to Mr. Derderian a copy of a loan commitment from SSP to defendants.  The commitment letter was a Word attachment to the email. A copy of the covering email is annexed hereto as Exhibit 1. Although I did not sign the commitment letter because it was transmitted by email, I intended the letter to be a binding offer by SSP which would be a contract binding on both parties when duly accepted by defendants.  This intention is plain from the language of the cover E-mail and the commitment letter.  Both the cover E-mail and letter call for the letter to be signed and returned by 5pm on February 23, 2007.  The letter indicates that signing and return of the letter will constitute "acceptance of this Commitment".  And the letter provides,

> "If we have not received your signed acceptance of this commitment and deposit check by 5pm on February 23, 2007, time being of the essence, this Commitment shall expire and be of no force and effect."

This language would have no meaning unless it was understood that the Commitment was a binding offer which would expire unless a signed acceptance was received by a definite time.  Although the Commitment was issued by Michael Gordon, Mr. Derderian was instructed to fax the signed Commitment to

2

Richard Grodsky since it was not intended that any further action by Michael
Gordon was required to commit SSP.

6.      Mr. Derderian and his wife signed the commitment letter and
transmitted it back to me by fax. A copy of the executed commitment letter is
annexed hereto as Exhibit 2. We believe it is clear that Mr. Derderian knew the
Commitment was binding. At no point did he request a return of his deposit.

7.      SSP had agreed with Mr. Derderian that it would close as soon as
possible since he indicated he was in a desperate position with his lenders. We
proceeded quickly to prepare for closing. We obtained title reports on all the
properties and conducted due diligence on the properties. At the same time, our
counsel prepared the legal documentation for the closing of the loan and
forwarded it to Mr. Derderian's lawyer, Richard Kaplin.

8       One of Mr. Derderian's lenders had scheduled a foreclosure sale on
one of his properties which was to be one of the properties which was to be
collateral for our loan. That foreclosure sale was imminent and would have
jeopardized our loan closing. At Mr. Derderians request and utilizing contact
information for the lender provided to us by Mr. Derderian, we called counsel for
the lender that was about to foreclose and advised the lender that we had given
a binding commitment to close a loan that would enable Mr. Derderian to bring
his loan current and that our loan would close within a very short time. Based on
our assurance, that lender agreed to hold off foreclosure until after the
anticipated closing of our loan. Our exchange of email with this lender is
annexed hereto as Exhibit 3.

3

8.    A little over two weeks after the commitment letter had been signed, on March 6, 2007, SSP sent a list of items to defendants' counsel that needed to be completed prior to closing.  Exhibit 4.

9.    However, defendants did not make any efforts to proceed to the closing.  On March 7, 2007 I spoke to Mr. Derderian to see if he intended to proceed to closing.   A copy of my memorandum of that conversation is annexed hereto as Exhibit 5.  Mr. Derderian indicated his sale of his 111th Street property was now likely to close promptly and he did not want to borrow the full amount he agreed to or to repay the amount required by the Commitment when the sale occurred.  He thus sought to change the terms of the loan commitment. Recognizing Mr. Derderien was threatening to reneg on his agreement, we offered to make some modifications in the agreement but remained firm on most elements of the agreement including the loan amount.

10.    On March 8, 2008 my partner Richard Grodsky called Mr. Derderian to ask him if he would close.  The results of that conversation were inconclusive, with Mr. Derderian stating he would think about it overnight.  A copy of Mr. Grodsky's report to me of that conversation is annexed hereto as Exhibit 6. It was the normal course of business for SSP to create memoranda of important conversations with borrowers and this record was created and maintained in the normal course of SSP's business.

11.    On March 9, 2007 SSP's counsel sent defendants' counsel a formal letter stating that it was ready to close provided defendants cooperated in providing the remaining materials needed to close.  Mr. Grodsky also sent a copy of the letter to Mr. Derderian.  A copy of Mr. Grodsky's cc to me of the letter is

4

annexed hereto as Exhibit 7.  It was the normal course of business for SSP to maintain records of important communications with borrowers and this record was created and maintained in the normal course of SSP's business.  Mr. Derderian did not respond to this letter.

12.    On March 14, 2007 I called Mr. Derderian to ask him if he was going to close.  He said no.  A copy of my memorandum summarizing that conversation is annexed hereto as Exhibit 8.

13.    Plaintiff suffered two categories of damages as a result of defendants' breach of the agreement.  The first was it was not paid the loan origination fee.  The loan origination fee, set forth on the first page if the commitment letter (Exhibit 2 hereto) was $132,000.

14.    The second category of damages which plaintiff suffered was its lost profits on the loan.  The loan term was for one year.  The amount of the loan was $2,200,000.  We know that defendants would have almost immediately repaid $1,200,000 to secure the release of 72-84 East 111[1] Street property, which was sold on March 16, 2007.[1]  Therefore, plaintiff would be entitled to its lost profits on $1,000,000 for the loan term of one year.

15.    Plaintiff would have funded the loan from the money in its money market accounts which at this time were yielding 4% or less.  A copy of a money market statement from this time period is annexed hereto as Exhibit 9.  The interest rate on the loan was 14.5% or 5 3/4% over prime, whichever was greater.  To simplify calculation, plaintiff has used the 14.5% interest rate.

---

[1] The loan commitment stated "Borrower shall be entitled to a release of the mortgage given hereunder with respect to 72-84 East 11[sic] Street upon the making of a principal payment of $1,200,000 ..."  Exhibit 2, p.3.

Plaintiff is therefore entitled to $105,000 (the difference between 14.5% and 4% times $1,000,000 times 1 year) as its damages for lost profits.

16.    Plaintiff was unable to cover to mitigate its damages. Plaintiff's problem was not lack of money, it had several million dollars in the bank and access by borrowing ^to many millions more. Plaintiff was not presented with any loan it wished to make which it would not have been able to make had it closed the loan to defendant.

Michael Gordon

Subscribed and sworn to before me this __ day of August, 2008

Notary Public
Richard C. Yeskoo
No. 02YE4718401
Qualified in New York County
Commission Expires 5/29/2011

6

# EXHIBIT 1

**From:** Michael Gordon [mailto:michaelgor@msn.com]
**Sent:** Friday, February 23, 2007 1:04 AM
**To:** Haroutiun Denderian (nyharout@yahoo.com)
**Cc:** 'Richard Grodsky'
**Subject:** New Loan Commitment

Harout

I am attaching a red-line and clean version of a revised commitment to reflect our current understanding.  Please sign and have your wife sign the new commitment and fax it to Richard Grodsky before 5pm tonight at (301) 977-4848(fax).

Michael

Michael Gordon
11607 Springridge Road
Potomac, MD 20854
(301) 921-6661
(301) 921-0078 (fax)
michaelgor@msn.com

# EXHIBIT 2



PLAINTIFF'S
EXHIBIT SK
4-9.8

# SSP CAPITAL PARTNERS, L.L.C.

11607 Springridge Road, Potomac, MD 20854  (301) 921-6661  Fax (301) 921-0078

February 22, 2007

Haroutiun Denderian
Managing Member
Mandala LLC
Haroust LLC
Hamilton Grange LLC
Arabia LLC
316 Second Ave., LLC
New York, NY

      Subject:      Secured Loan

Dear Mr. Derderian:

      Subject to the terms and conditions of this letter, we have amended and restated the loan commitment letter dated December 21, 2006 (the "Original Commitment Letter"), and agreed to make a loan secured by Mortgages and Pledges on the real property and ownership interests described on Exhibit A (the Collateral).

| | |
|---|---|
| <u>Borrower</u>: | Mandala LLC; Haroust LLC; Hamilton Grange LLC, and Arabia LLC, and 316 Second Ave., LLC |
| <u>Guarantors</u>: | Haroutiun (Harry) Denderian and Ekaterina Denderian, husband and wife. |
| <u>Amount</u>: | $2,200,000 |
| <u>Facility</u>: | Term Loan (the "Loan"). |
| <u>Purpose</u>: | Business and investment |
| <u>Term</u>: | One Year |
| <u>Repayment Terms</u>: | The Loan will be repaid in full at maturity. |
| <u>Prepayment Penalty</u>: | None |
| <u>Interest Rate</u>: | 14% per annum or 5 ¾% over Prime Rate, whichever is greater, payable monthly in arrears beginning on the first day of the second month subsequent to the month of loan closing. Interest for the partial month of the loan closing shall be paid in advance at the loan closing. |
| <u>Funding</u>: | Funds will be advanced at loan closing. |
| <u>Loan Origination Fee</u>: | $132,000 to be paid at loan closing. |
| <u>Interest Reserve</u>: | At Loan Closing, Borrower shall post $306,000 as an interest reserve which shall be retained by Lender in an interest bearing account, said interest for the benefit of Borrower. Funds from this account shall be disbursed to Lender for (i) required interest |

SSPvM000105

payments on the Loan and for any other payments required or necessary under the loan documents and (ii) for not more than $56,000 in interest payments under the existing loan with respect to 72-84 East 111th Street, NY, NY, and (iii) for not more than $96,000 in interest payments under the existing loan on 116-122 East 124th Street, NY, NY. Any balance held in this reserve shall be held as collateral for Borrower's obligations under the Loan Documents. At the time of repayment of the Loan in full, any remaining balance in the reserve with accrued interest will be returned to Borrower.

**Borrower Deposit:**   $10,000 which was paid upon acceptance of the Original Loan Commitment In addition to the $10,000 deposit provided for in this Paragraph , Borrower shall advance as an additional deposit any retainer or additional retainer requested by counsel for Lender in respect of its representation of Lender in connection with this loan transaction. Such advance of a retainer or additional retainer shall be made within 1 business day of receiving a written request for such retainer or additional retainer. This deposit and additional deposit shall be applied to Borrower's obligation to pay all costs to Lender associated with this transaction or to Borrower's obligations at Loan Closing, or in the event Borrower fails to close as required by this Commitment after acceptance of the Commitment by Borrower, this deposit shall be forfeited to Lender. Such forfeiture shall not limit Lender's remedies in the event of Borrower's default hereunder.

**Collateral:**   Mortgages or Pledges of the Collateral as indicated on Exhibit A.

**Documentation:**   The Loan will be evidenced by the execution of documentation prepared by counsel to Lender. Said documentation will include comprehensive terms and conditions satisfactory to the sole discretion of Lender and its counsel including terms and conditions not outlined in this Commitment and including an Environmental Indemnification Agreement and a Confession of Judgment clause. The documents shall also require the Hamilton Grange LLC within 60 days of closing of this loan to make application to the City of New York for a Certificate of Occupancy for the 28 units in the building at 605-07 West 141st Street, New York, NY and to pursue the issuance of the Certificate of Occupancy with reasonable diligence including the diligent effort to make whatever repairs and renovation which the City of New York shall require as a condition for the issuance of the Certificate of Occupancy.

**Title Insurance:**   The Loan will be conditioned on Lender's receipt of a title insurance commitment for the Collateral and an insured closing letter acceptable to Lender and counsel to Lender in their sole discretion.

**Business Hazard Insurance:**   Not less than 7 days prior to the closing of the Loan, the Borrower will provide Lender certificates of insurance evidencing appropriate insurance coverage for liability and casualty losses and evidencing that Lender is a named insured on all policies.

2

SSPvM000106

The insurance policies must be acceptable to the Lender in all respects, including coverage amounts, issuing companies and scope of coverage.

**Required Reporting:**

Until the Loan has been funded and fully repaid, the Borrower and Guarantors will provide or cause to be provided to Lender the following.

a) Their annual tax returns within thirty days of its filing including an Application for Extension if one is filed;

b) Their fiscal year-end financial statements by March 1 of each year.

c) Copies of any agreements of sale or lease of the Collateral and any amendments thereto promptly after execution of such agreements.

d) Prompt notice of any material adverse change or any litigation or governmental proceeding with respect to the Collateral, the Borrower or the Guarantors.

**Late Charges:**

After the Loan Reserve has been fully disbursed, a fee of 10.00% of the payment amount will be assessed for each and every scheduled payment (including the repayment of the principal balance of the loan on the maturity date) that is not received by Lender by the close of business on the 10th day following the payment due date.

**Default Rate of Interest:**

Should the Borrower be in default, after notice and expiration of applicable cure periods in the Loan Documents, of the terms of the Commitment, the rate of interest on all indebtedness of the Borrower to the Lender will increase by 8.00% effective immediately upon Lender's declaration of the default.

**Mortgage Brokerage Fee:**

Lender and Borrower agree that there is no broker in this transaction and that Lender and Borrower each agree to pay any mortgage brokerage fee due as a result of their own actions.

**Other Conditions:**

Subordinate liens on the Collateral shall not be permitted.

During the term of this Loan, a default by any Borrower hereunder under any note secured by a mortgage prior in interest to any Collateral hereunder or secured by a pledge of an ownership interest in any Borrower shall constitute a default hereunder.

So long as Borrower is not in default of the note, mortgage, or other loan documents hereunder, Borrower shall be entitled to a release of the mortgage given hereunder with respect to 72-84 East 11th Street upon the making of a principal payment of $1,200,000 in addition to the payment of all accrued interest and the payment of all costs in connection with the release and the loan curtailment including the Lender's legal fees.

The Borrower must be in good standing with the jurisdiction in which it is domiciled.

The Borrower must comply with all applicable federal, state and local laws, rules, regulations and ordinances.

This Commitment letter is not assignable by Borrower.

SSPvM000107

At or following the closing of the Loan, Lender, may assign all or a portion of its Note to one or more individuals or entities. Borrower shall reasonably cooperate in any such assignments without cost or expense to Borrower.

Costs:

All costs to Lender in respect of the Original Loan Commitment and all costs associated with this transaction including, without limitation, Lender's legal expenses, will be paid by the Borrower, whether or not the loan transaction contemplated hereunder closes or not,.

Warranties:

The Borrower hereby warrants that (i) there is no litigation or administrative or judicial proceeding existing, pending or planned that would in any manner adversely affect the Borrower's ability to repay the funds provided under the Commitment; (ii) that the proceeds of the Commitment will be used solely for the commercial and business purposes of the Borrower and not for personal, family or household purposes; (iii) that any litigation now pending or threatened against the Borrower is de minimis or adequately covered by existing liability insurance. All warranties will be true as of the date of the closing of the Loan and will continue as true until the Commitment has been repaid in full. The Borrower agrees to promptly inform Lender of any event which causes any of these Warranties to be come untrue and, from time to time, to execute and deliver to the Lender, upon request, such affidavits or certifications affirming the continued truth of said Warranties as the Lender may request.

Material Adverse Change:

At any time before funding of the Loan, Lender shall have no obligation to close and fund the Loan if, in Lender's sole judgment, there shall have occurred any (a) acts of war, acts of terrorism, or force majeure or (b) any material adverse change in conditions regarding the Collateral or the Borrower; that could be expected to cause the Loan to become delinquent or to adversely affect the value or marketability or profitability of the Loan.

Lender Due Diligence Period:

Lender's commitment hereunder is subject to Lender's approval in its sole discretion of the Collateral, the Disclosure Materials, and other due diligence by Lender within 2 business days following Lender's receipt of the Commitment accepted by Borrower and Guarantors and following Lender's receipt of the Disclosure Materials and the Credit Report. In the event Lender does not approve the Loan during the Due Diligence Period, Lender will refund Borrower's deposit less any out of pocket costs associated with this transaction which have been incurred by Lender through the date of its disapproval of the Loan.

Disclosure Materials

Borrowers shall promptly provide Lender with the following disclosure materials:
1. Copies of all outstanding notes and mortgages with respect to 230 East 27th Street and 316 Second Avenue.
2. Copy of the deed restriction on 108-112 East 124th Street, New York, NY

SSPvM000108

3.  A copy of all signed documents with respect to the loans from Lender's Capital with respect to 29 West 26th Street and 230 East 27th Street
4.  Operating    Agreement    and    other    organizational documents for 316 Second Ave., LLC

<u>Credit Report</u>

Guarantors, by accepting this letter agreement below hereby authorizes Lender to obtain credit reports showing the credit ratings and supporting details for both Guarantors.  Guarantors have provided Lender with its Social Security numbers for purposes of obtaining such credit reports.

<u>Terms and Conditions</u>:

The terms and conditions of this Commitment shall survive the closing of the Loan; provided, however, that if the terms and conditions of this Commitment shall conflict with any of the terms and conditions of the Loan documentation in this transaction, the terms and conditions of the Loan documentation shall prevail.

Please indicate your acceptance of this Commitment by signing below and returning this letter by fax no later than 5pm, February 23, 2007 to:

Richard Grodsky (301) 977-4848 (fax)

If we have not received your signed acceptance of this commitment and deposit check by 5pm on February 23, 2007, time being of the essence, this Commitment shall expire and be of no force and effect.

5

SSPvM000109

If you have any questions or would like to discuss any of the terms and conditions of this Commitment, please give me a call at 301 928-9920.

Sincerely,


Michael Gordon



Accepted this _13RD_ day of ~~December~~, 200~~8~~. FEBRUARY 7

BORROWERS:

    Mandala LLC
    Haroust LLC
    Arabia LLC   ARABARA LLC
    316 Second Ave., LLC

    By: _____
    Haroutiun Derderian, Managing Member of Each Borrower

    Hamilton Grange LLC

    _____
    Haroutiun Derderian, Manager

    Hamilton Grange LLC

    _____
    Ekaterina Tsintadze, Sole Member


GUARANTORS:

    _____
    Haroutiun (Harry) Derderian

    _____
    Ekaterina Derderian

6

SSPvM000110

# EXHIBIT A
## THE COLLATERAL

### MORTGAGES

1. 29 West 26th Street, New York, NY. A seven story loft building. 2nd Mortgage to be given subject only to an existing first mortgage with an outstanding balance not to exceed $1,800,000.

2. 605-07 West 141st Street, New York, NY. A 28 unit multifamily building. 2nd Mortgage to be given subject only to an existing first mortgage with an outstanding balance not to exceed $4,050,000.

3. 72-84 East 111th Street, New York, NY. A partially improved lot of approximately 11,706 square feet including a vacant commercial warehouse. A 2nd Mortgage to be given subject only to an existing 1st mortgage with an outstanding balance not to exceed $3,600,000.

4. 230 East 27th Street, New York, NY. A 25 Unit multifamily building. A second mortgage to be given subject only to a mortgage not to exceed $4,600,000.

5. 316 2nd Avenue, New York, NY. A 10 unit multi-family building. A 2nd mortgage to be given subject only to a mortgage not to exceed $2,325,000.

### PLEDGE OF OPTION CONTRACT TO PUCHASE UNIMPROVED LAND:

1. 108-112 East 124th Street, New York, NY. An option to purchase this unimproved land of approximately 75 feet by 100 feet for $1,600,000. No lien may be placed on this option during the term of this loan.

7

SSPvM000111

# EXHIBIT 3

# YAHOO! MAIL

| | |
|---|---|
| **To:** | michaelgor@msn.com |
| **Subject:** | Re: 29 W. 26th Street-Loan to Haroutiun Derderian interests |
| **Date:** | Fri, 23 Feb 2007 11:04:15 -0500 |
| **From:** | pafried22@aol.com |
| **CC:** | richard.grodsky@verizon.net, nyharout@yahoo.com, Hengerer@gyfb.com, rrubin@rubinlicatesi.com |

My client will discuss adjourning the sale with partners on Monday when they come back from vacation

-----Original Message-----
From: michaelgor@msn.com
To: pafried22@aol.com
Cc: richard.grodsky@verizon.net; nyharout@yahoo.com; Hengerer@gyfb.com;
rrubin@rubinlicatesi.com
Sent: Thu, 22 Feb 2007 8:36 PM
Subject: 29 W. 26th Street-Loan to Haroutiun Derderian interests

Ms. Patricia Friederich

Pat:

This will confirm our discussion earlier today.  We have indicated to Haroutiun. Derderian that we intend, subject to satisfactory title and satisfactory title insurance commitments, perfection of mortgage interests on several properties, and other conditions, lend $2,200,000 to various entities controlled by Mr. Derderian.  This loan amount would include amount necessary to pay off at the loan closing the loan of Mandala, LLC with respect to 29 West 26th Street and bring current the loan with respect to 230 E. 27th Street.  Subject to all loan conditions being met, we believe the loan will close the week of February 26, 2007.

We understand from Mr. Derderian that as a result of the default by Mandala, LLC under a note to the order of your client and pursuant to your client's Pledge and Security Agreement, your client, Lender's Capital, LLC, has scheduled for March 1, 2007, a sale of Mr. Derderian's membership interests in Mandala, LLC.

As we discussed, we request that your client agree to postpone this sale to give us an opportunity to close the anticipated loan to Mr. Derderian's interests.  To allow for possible delays in our schedule, we suggest a delay in the sale to allow for a loan closing as late as March 9, 2007.  In consideration for this delay in the sale, Mr. Derderian has indicated a willingness to post the cost of re-publication of a sale, such amount to be credited against the amount owed by Mandala, LLC if the loan closes as we have described and re-publication is not necessary.

Please advise us tomorrow morning whether your client will agree to the suspension of the sale as I have described. If the suspension is not accepted, we will seek to purchase your note on 29 West 26th and your pledge agreement. Given the short time before the scheduled sale, we need all the time available beginning tomorrow to accomplish this approach.

As I mentioned, I will personally be away from tomorrow morning through Sunday night.  Please advise us of your client's decision with respect to our request by return E-mail to me and to Richard Grodsky, my partner, and by also calling Richard Grodsky at (301) 921-4101 since he may not be in a position to review E-mail until tomorrow evening.

Our attorney for the loan closing is Richard Rubin, Rubin & Licatesi, (516) 227-2662.  If it becomes necessary, our attorney for purchase of your client's 26th Street note and pledge agreement is Linton Hengerer, (202) 296-9696 x 209.

Thanks for your help on this matter.

Sincerely,

Michael Gordon

SSPvM000173

Page 1 of 2

**Eka**

**From:** Richard Grodsky [richard.grodsky@verizon.net]
**Sent:** Monday, February 26, 2007 5:43 PM
**To:** Haroutiun Derderian
**Subject:** FW: 29 W. 26th Street-Loan to Haroutiun Derderian interests

*KAPLIN!*

You need to get this taken care of ASAP. I have things moving forward with Rubin. He wants confirmation that your attorney has the titles. I believe that this is Richard Kaplan. I would like Richard Kaplan's contact info including email address.

Richard Grodsky
301-921-4101
301-977-4848 fax
301-580-5358 cell
richard.grodsky@verizon.net

*RKAPLIN@DLDKLAW.COM*
*718 238 6800 x28*
*FAX*
*718 680 2294*
*CELL 908 875 6753*

**From:** pafried22@aol.com [mailto:pafried22@aol.com]
**Sent:** Monday, February 26, 2007 3:21 PM
**To:** richard.grodsky@verizon.net
**Subject:** Fwd: 29 W. 26th Street-Loan to Haroutiun Derderian interests

-----Original Message-----
From: pafried22@aol.com
To: michaelgor@msn.com
Sent: Mon, 26 Feb 2007 3:13 PM
Subject: Re: 29 W. 26th Street-Loan to Haroutiun Derderian interests

I have received word from my client that they will adjourn the sale on March 1, 2007, if they recieve the cost to republish the notice of sale and to reproduce Notice of Sale for new date.   They want to renotice the sale right away as publication will take over a month.   The cost to republish and reproduce the notices and mail is $1,715.12

We will need the sum of $ 1,715.12 by tomorrow 5PM to adjourn the sale.

*RECEIVED*
*$1,720 CASH*

Wiring Instructions attached    Confirm the wire

*A. Lefkanides*

-----Original Message-----
From: michaelgor@msn.com
To: pafried22@aol.com
Cc: richard.grodsky@verizon.net; nyharout@yahoo.com; Hengerer@gyfb.com; rrubin@rubinlicatesi.com
Sent: Thu, 22 Feb 2007 8:36 PM
Subject: 29 W. 26th Street-Loan to Haroutiun Derderian interests

Ms. Patricia Friederich

Pat:

This will confirm our discussion earlier today.  We have indicated to Haroutiun. Derderian that we intend, subject to satisfactory title and satisfactory title insurance commitments, perfection of mortgage interests on several properties and other conditions, lend $2,200,000 to various entities controlled by Mr. Derderian.  This loan amount would include

SSPM000145

# EXHIBIT 4

**Eka**

**From:** Richard Grodsky [richard.grodsky@verizon.net]
**Sent:** Tuesday, March 06, 2007 8:32 PM
**To:** 'Richard Grodsky'; Rick Rubin; Richard Kaplin; Janis DiGennaro; 'Michael Gordon'
**Cc:** Haroutiun Derderian
**Subject:** RE: Derderian closing checklist

My error in #7 below. This reinstatement applies to the $200,000 2nd held by Lender's on 230-232 E. 27th.

Richard Grodsky
301-921-4101
301-977-4848 fax
301-580-5358 cell
richard.grodsky@verizon.net



**From:** Richard Grodsky [mailto:richard.grodsky@verizon.net]
**Sent:** Tuesday, March 06, 2007 7:01 PM
**To:** Rick Rubin; Richard Kaplin (rkaplin@dldklaw.com); Janis DiGennaro; 'Michael Gordon'
**Cc:** Haroutiun Derderian
**Subject:** Derderian closing checklist

Here are the items that we still need to resolve in order to close and the name of the party (ies) who will obtain:

1. Reinstatement letter Country Bank 29 W. 26th St. (Richard Kaplin)
2. Payoff letter Lender's Capital 29 W. 26th St. (Richard Kaplin)
3. Reinstatement letter WAMU 605 W. 141st St for 1st and 2nd Mortgages (Richard Kaplin)
4. Reinstatement letter WAMU 230-232 E. 27th St. (Richard Kaplin)
5. Reinstatement letter WAMU 316 Second Avenue (Richard Kaplin)
6. Reinstatement letter Country Bank 72 E. 111th St. (Richard Kaplin)
7. Reinstatement letter Lender's Capital 72 E. 111th St. (Richard Kaplin)
8. Revisions to Pledge Agreement (Rick Rubin, Michael Gordon)
9. Determination of escrow at Lex Terrae relative to ECB's (Rick Rubin, Richard Kaplin)
10. Title Binder to reflect SSP Capital Partners LLC as Mortgagor and the amount of the Mortgage (Rick Rubin)
11. Selection of title endorsements for inclusion in title policy (Rick Rubin)
12. Affirmation from Lex Terrae of compliance with title requirements on Schedule B of the binders. It is possible that some steps may need to be taken to complete this item by Richard Kaplin. This effectively includes #9 above. (Rick Rubin, Richard Kaplin)

We need to stick to our proposed closing date of March 8, 2007. I am available to assist any party with any task other than the authorship of documents. Loan docs and titles are in good shape with a few minor exceptions. Insurance is in place. We need some velocity on the reinstatements and finalization with some minor title company issues. Let's get this complete and close it on Thursday.

Richard Grodsky
301-921-4101

SSPvM000150

301-977-4848 fax
301-580-5358 cell
richard.grodsky@verizon.net

SSPvM000151

# EXHIBIT 5

Memo of Conversation
March 7, 2007

Harout Derderian called midday on March 7.

He indicated two lenders had raised the amount he needed for closing-Country Bank and Lenders.  Lenders was requiring him to pay off 27th Street which he wanted to pay off out of his refinancing of 27th Street.  The money in the loan would therefore not pay off every one.

He also indicated he had been reviewing his entire situation and wanted to change the terms of our loan.  He referred to my recent conversation with him about the importance of honoring his commitments but he still needed to change our deal.  His principal reason was that he now believed the closing on the 111th Street Sale would occur on Friday, March 16.  Under the loan terms he would pay 6 points on the total loan of $2.2 million.  When the 111th Street sale closed 8 days later, he would have to pay down the loan by $1.2 million.  He would have only 8 days use of the $1.2 million but would pay all the points.

He proposed a loan of $1.5 million which would pay off Country Bank and Lenders and he would pay Washington Mutual from the proceeds of sale of 111th Street.  He felt this was a compromise.

I called Richard to discuss the call with Derderian.  We called Derderian back and I added Richard by conference call so we could both speak to him.  We told him we were not willing to reduce the loan and reduce the amount of fees simply because it now suited him and because he no longer felt he needed all the money we had agreed to. We indicated we had invested a tremendous amount of time and effort in this deal.  I told him we were both bound by the agreement.  We were not free to change it for our convenience and nor was he.  When we committed, we had no idea when his 111th Street sale would close.  He was under pressure and needed to pay his lenders.  We made the commitment he requested and needed and raised the amount to cover his financing requests.  We told him we were willing to consider a change in the deal to increase the loan to cover the requirements of the lenders and to allow a smaller curtailment in the loan at the time of release of 111th Street-perhaps a $700,000 curtailment instead of $1.2 million.  I told him explicitly that we were prepared to close and we believed we had earned our fee under the commitment agreement.

Both Richard and I told Derderian that his attorney was not responsive and was delaying closing.  We indicted he needed to insure his attorney's cooperation.

Derderian indicated he would consider our position but did not commit to close under our agreement.

000124


PLAINTIFF'S EXHIBIT

# EXHIBIT 6

## Michael Gordon

**From:** Richard Grodsky [richard.grodsky@verizon.net]
**Sent:** Thursday, March 08, 2007 7:31 PM
**To:** 'Michael Gordon'
**Subject:** 3/8/07 conversation with Derderian late afternoon

I informed him that our lawyers were still having trouble getting any feedback from his attorney. He stated that he was also having a hard time getting in touch with Kaplin. He went over the whole history of the deal, the original commitment, the period where he was looking for financing elsewhere, and the new commitment that we entered into which we were trying to close now (5 minute monologue where every important point ended with "whatever"). He expressed his need for less financing due to the likely impending closing of the 111th St property. He wanted to borrow $1.5m and not give 111th St as security. We had previously agreed that the loan would need to be curtailed to $1.0m to release the 111th St collateral. I reminded him that this change in our security position was yet another concession that we were making for him, one of many that he had requested and that we had made subsequent to entering into our written agreement. He was very focused on not paying points on the amount that he was going to be curtailing very quickly. I quantified this for him as being $42,000. He said several times, "why should I pay points on the money that I'm curtailing in 8 days?" I suggested that the answer was that he had agreed to do so in our loan commitment. I reminded him that we had helped him with the foreclosing noteholder on 26th St. by prevailing on their attorney to delay the proceeding based on our committed financing. He acknowledged that we had been helpful. He wondered why Country Bank, WAMU and Lender's Capital were all giving him until March 19 to reinstate. I explained to him that all of his lenders were aware of our pending financing which is what moved them to hold on through March 19. I reminded him that at his urging, I had several conversations with Jay Hack (Country Bank lawyer) and went over some of the facts about our financing that were favorable to Country Bank (including our requirement that 2 months of interest for their financing on 111th St be held in escrow by us, and the fact that all other financing was being brought current and our loan was covered with a 6 month interest reserve). I reminded him that we had also expressed a willingness to address his need for additional capital to take Lender's Capital out of the 27th St property. I told him that we had been willing to work outside of the framework of the commitment letter to satisfy his changing needs over a protracted period of time, but that the negotiations had to stop and he had to either move forward and settle our financing under the terms of our commitment (which we were still willing to modify to accommodate a more modest curtailment requirement when 111th St closed and perhaps a greater total amount of funds), or choose to default. I pressed him for an immediate answer, but he told me that he needed to sleep on it.

Richard Grodsky
301-921-4101
301-977-4848 fax
301-580-5358 cell
richard.grodsky@verizon.net


5/12/2008

# EXHIBIT 7

MAR. 10. 2007  5:17PM    BETHESDA INVESTMENT GROUP                    NO. 569    P. 1

**SSP CAPITAL PARTNERS, LLC**
**P.O. BOX 4208**
**GAITHERSBURG, MD 20885-4208**
**301-921-4101/FAX 977-4848**
email: richard.grodsky@verizon.net

March 9, 2007

Mr. Haroutiun Denderian

Via fax only to 212-777-8554 (2 pages)

Dear Haroutiun:

I am enclosing a copy of an email sent by Rubin & Licatesi to your Richard Kaplin which you might not otherwise receive until Monday.

You need to look at this carefully as we are quite serious about completing this transaction.

Richard Grodsky



PLAINTIFF'S
EXHIBIT

MAR. 10. 2007  5:17PM    BETHESDA INVESTMENT GROUP                    NO. 569    P. 2

RUBIN —
"WE ARE
READY to
Close"

**VIA EMAIL RKAPLIN@DLDKLAW**
Richard Kaplin, Esq.

**Re: Derderian**

Dear Mr. Kaplin:

With respect to the above matter, our office has worked diligently in order to provide our respective clients the necessary documentation and incidental correspondence in order to close on the agreed commitment. We have been in communication both with your office and the title company and it is my considered opinion that our client has fulfilled all terms and obligations of the commitment and has been ready to close for some time. In fact, we have made efforts to schedule the closing without a response from your office.

Despite these efforts, we have not received your comments on the loan documents or any clearance of the title issues pertaining to the issues raised therein which were to be cleared by your client.

We await your reply with a prompt closing date. If this loan does not close or your client does not make substantial effort to close this loan by Tuesday March 13, 2007 we will assume your client does not intend to close this loan and we will proceed accordingly.

Very truly yours,

RICHARD H. RUBIN

RHR/jjd

CC: SSP Capital Partners LLC.

SSPvM000157

# EXHIBIT 8

## MEMORANDUM OF PHONE CALL

I called Haroutiun Derderian on Wednesday, March 14, 2007, to ask if he intended to close the loan for $2.2 Million we had agreed to in our executed loan commitment. He apologized for not getting back to Richard. He said his sale of the 111th Street property would in fact close on Friday and because of that timing he would not close our loan. It would be insane to do so since the 111th Street money would come back immediately.


PLAINTIFF'S
EXHIBIT

000125

# EXHIBIT 9

05/12/2008 12:51 FAX 212 983 0907    YESKOO HOGAN & TAMLYN    @011

WORKING WEALTH ᵀᴹ
AT SMITH BARNEY

# Smith Barney Reserved Client
## Consolidation Summary
### March 31, 2007

Ref. 00004120 00000041

C070000412O 307089AA01 APWMF003A
SSP CAPITAL PARTNERS LLC
ATTN: MICHAEL GORDON
RICHARD GRODSKY
11607 SPRING RIDGE RD
POTOMAC MD 20854-1110



Your Broker/Dealer is
CITIGROUP GLOBAL MKTS INC.
Your Financial Advisor
HARRIS/KINGSLEY/WERNICK
1850 K STREET NW
STE 900
WASHINGTON DC 20006
202 857 5408

Reserved Client Service Center: 800-423-7248

011311

## Summary

We have enclosed statements for the following accounts in your consolidated household. "Total Value Comparison" and "Year to Date Summary" may contain information for previously existing accounts which have been recently consolidated. Unless otherwise indicated, values shown are for "This Period". Accrued interest and dividends, earned but not paid, are excluded from the Adjusted Net Value.

| Account Number | Abbreviated Name | Account Type | Total Value Prior Month / Adj Net Value | Total Value This Period / Adj Net Value | Net Securities Deposited / Withdrawn | Net Capital Deposits / Withdrawals | Total Income Taxable / Non-Taxable | Unrealized Gain or (Loss) | Adjusted YTD Realized Gain or (Loss) |
|---|---|---|---|---|---|---|---|---|---|
| 376-42808 | SSP CAPITAL PARTNERS LLC ATTN: MICHAEL GORDON | SBR | $3,551,801.28 / $3,551,801.28 | $2,110,347.93 / $2,110,347.93 | $0.00 ($1,450,000.00) | $8,546.85 $0.00 | $0.00 $0.00 | $0.00 ST $0.00 LT | |
| 376-43374 | WESTPHALIA LAND DEVELOPMENT PA SBR MICHAEL GORDON | | 6,389.74 / 6,389.74 | 21,230.11 / 21,230.11 | 14,763.75 | 66.62 0.00 | | 0.00 ST 0.00 LT | |
| 376-43375 | WESTPHALIA DEVELOPMENT PARTNERSBR | | 20,126.54 / 20,126.54 | 15,177.01 / 15,177.01 | (5,000.00) | 50.47 0.00 | | 0.00 ST 0.00 LT | |
| Total | | | $3,578,317.56 / $3,578,317.56 | $2,146,755.05 / $2,146,755.05 | $0.00 ($1,440,236.25) | $8,663.74 $0.00 | $0.00 ST / $0.00 LT | | |

### Year to Date Summary

| | |
|---|---|
| Beginning total net value as of 12/31/06 | $3,569,133.88 |
| Net security deposits/withdrawals (year to date) | 0.00 |
| Net cash deposits/withdrawals (year to date) | (1,454,139.40) |
| Beginning value net of deposits/withdrawals | $2,110,994.42 |
| Ending value net of deposits/withdrawals | $2,146,755.05 |
| Year to date total return | 35,760.63 |

*(handwritten: 03/30/07    $2,110,994.42    $2,300.00    S2-07)*

### Current Total Asset Allocation Summary

100.0% Cash

### Total Value Comparison

6/06: 3.28
9/06: 1.80
12/06: 3.57
1/07: 3.57
2/07: 3.58
3/07: 2.15

Units in multiples of 1 million.



citigroup
SmithBarney



# EAGLEBANK

FDIC

7815 Woodmont Avenue • Bethesda, MD 20814
(301) 986-1800 • TeleBank 1-800-364-8313
www.eaglebankmd.com

```
008 00005 09                        PAGE:     1
ACCOUNT:        5200020336      03/30/2007
DOCUMENTS:            1
```

```
SSP CAPITAL PARTNERS LLC                          30-0
11607 SPRINGRIDGE RD                                 1
POTOMAC MD 20854-1110                                0
```

WE HAVE ENHANCED YOUR ABILITY TO EARN MORE ON YOUR EAGLEBANK MONEY MARKET
ACCOUNT WITH NEW TIER LEVELS. YOUR MMDA BALANCES MAY EARN THE HIGHER
RATES PAID ON HIGHER TIERS. CHECK WITH YOUR LOCAL BRANCH OR RELATIONSHIP
MANAGER OR VISIT WWW.EAGLEBANKMD.COM. THANK YOU FOR BANKING WITH US!

## BUSINESS MONEY MRKT ACCOUNT 5200020336

| DESCRIPTION | DEBITS | CREDITS | DATE | BALANCE |
|---|---|---|---|---|
| BALANCE LAST STATEMENT . . . . . . . . . . . . . . . . . . . . | | | 02/28/07 | 266,206.83 |
| DEPOSIT | | 5,771.11 | 03/09/07 | 271,977.94 |
| INTEREST | | 40s000 870.82 | 03/30/07 | 272,848.76 |
| BALANCE THIS STATEMENT . . . . . . . . . . . . . . . . . . . . | | | 03/30/07 | 272,848.76 |

| | | | | |
|---|---|---|---|---|
| TOTAL CREDITS | (2) | 6,641.93 | AVG MIN BALANCE | 269,092.38 |
| TOTAL DEBITS | (0) | .00 | MINIMUM BALANCE | 266,206.83 |
| | | | AVG AVAILABLE BALANCE | 269,861.86 |
| | | | AVERAGE BALANCE | 270,438.97 |

- - - - - - - - - I N T E R E S T - - - - - - - - - -

| | | | |
|---|---|---|---|
| AVERAGE LEDGER BALANCE: | 270,438.97 | INTEREST EARNED: | 870.82 |
| AVERAGE AVAILABLE BALANCE: | 269,861.86 | DAYS IN PERIOD: | 30 |
| INTEREST PAID THIS PERIOD: | 870.82 | ANNUAL PERCENTAGE YIELD EARNED: | 4.00% |
| INTEREST PAID 2007: | 2,593.31 | | |

011310

NOTICE: SEE REVERSE SIDE FOR IMPORTANT INFORMATION